UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SENGMANY SAVATXATH,

              Plaintiff,

   -against-                                     3:10-cv-1089

CHRISTOPHER STOECKEL, BINGHAMTON
POLICE DEPARTMENT, PATROLMAN and
DAVID BAER, BINGHAMTON POLICE
DEPARTMENT, PATROLMAN,

              Defendants.

_____

THOMAS J. McAVOY,
Senior United States District Judge

**DECISION & ORDER**

**I.    INTRODUCTION**

Plaintiff commenced this civil rights action *pro se*, asserting claims pursuant to 42 U.S.C. § 1983.  Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims. Motion, dkt. # 14. Plaintiff has opposed the motion.  For the reasons that follow, Defendants' motion is granted in part and denied in part.

**II.    STANDARD OF REVIEW**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp.

1

v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . .  a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65.  "Factual allegations must be enough to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965.  "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. at 1965 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Ashcroft, 129 S. Ct. at 1949.  Legal conclusions must be supported by factual allegations. Iqbal, at 1950.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. 557) (internal quotations omitted).

**III.    BACKGROUND**[1]

On or about June 22, 2009, between 12:00 AM and 1:30 AM, the Plaintiff ran out of gas while driving a friend's vehicle. The vehicle came to a stop under the Brandywine Highway overpass on Henry Street in the City of Binghamton. The Plaintiff had intended to drop two of his friends off at their home on Pine Street; however, after the vehicle died his friends walked home and he walked to the Extra Mart gas station on Court Street.  When he arrived at the gas station, he observed a marked Binghamton police vehicle parked across the street. Given the early morning hour, the Plaintiff went inside the station to pre-pay for his gas. He paid the store clerk $3.00.  When he came back outside the Binghamton police vehicle was still across the street. The Plaintiff began to fill a laundry detergent bottle with gasoline. While he was pumping gas, a friend named "Country" came up to him and started talking. Country was curious what the Plaintiff was doing in the area that late at night. The detergent bottle only held $.90 of gasoline and Country told the Plaintiff he should go back into the station to get his change from the clerk. The Plaintiff told Country he was alright, but that he needed to get back to the borrowed vehicle. Plaintiff and Country then each left the gas station.  At the time, the police vehicle was still across the street.

After leaving the gas station, Country walked to his house on Pine Street and the Plaintiff continued on to Henry Street toward the borrowed vehicle.  About five (5) minutes into his walk, when he was about 100 yards away from the vehicle, the Plaintiff was approached by a Binghamton police car with its lights on. The vehicle came from behind

---

[1]The background facts are taken from the Amended Complaint and deemed to be true for purposes of this motion.

3

Plaintiff and then pulled in front of him, blocking his path.  Two officers, Officer Baer and Officer Stoeckel, stepped out of the police vehicle.  Officer Baer asked Plaintiff to put down the bottle and the Plaintiff said, "I wasn't doing anything wrong."  Officer Baer then said, "Don't make me tell you again to put the bottle down." Plaintiff put the bottle down in the middle of Henry Street.  Plaintiff was then directed to put his hands on top of the police vehicle's hood.  Officer Baer then asked, "How come you only pumped $.90 at the gas pump?" Plaintiff replied that was all the laundry bottle would hold.  Officer Baer then asked, "How come you were talking to the black guy at the gas pump?"  Plaintiff explained that Country was his friend and had only said hello and asked if everything was okay.  Officer Baer asked if he could search Plaintiff, and Plaintiff said, "No. I didn't do anything wrong." Officer Baer asked again and the Plaintiff said "No" again.  "Officer Baer patted down the plaintiff he [*sic*] did not did not find any weapon's [*sic*].  As Officer Baer patted down the plaintiff, but this time he was searching through the plaintiff's pant's and jacket pocket's [*sic*]" Officer Baer found a crack pipe in Plaintiff's "right front pocket" and a piece of crack cocaine in the Plaintiff's "left upper front jacket."  Am. Compl., p. 3.  Officer Baer then asked Plaintiff if there was any more "stuff" and Plaintiff  told him that there was a bag of marijuana in his sock.  Plaintiff was then arrested.  Plaintiff asserts that the charges against him have since been "dropped."  Id. p. 9.

Plaintiff asserts in the First Cause of Action that Officer Baer violated Plaintiff's "unreasonable search and seizure [constitutional] rights" by detaining and searching plaintiff without "probable cause or reasonable suspicion."  Am. Compl., p. 7.  Plaintiff also asserts in the First Cause of Action that Officer Baer's actions "violated the plaintiff [*sic*] equal protection rights which in [*sic*] violation of the 14th Amendment." Id. Plaintiff asserts

4

in the Second Cause of Action that Officer Stoeckel "presented false statements and documents to the court, and did not protect the plaintiff [*sic*] constitutional rights of illegal search and seizure by the defendant Officer David Baer." Id.  Plaintiff asserts in the Third Cause of Action that "[t]here was no reason to confront Plaintiff" and that "anytime an intrusion on the security & privacy of the individual is taken with intent to harass or is based upon mere whim or curiosity, the spirt of the Constituion has been violated." Id.

## IV. DISCUSSION

### a. Post-Discovery of Crack Pipe Detention

Defendants move to dismiss Plaintiff's claim for damages arising from the period of detention occurring after the discovery of the crack pipe.  They argue that once the officers discovered the crack pipe on Plaintiff's person, they had a reasonable suspicion that criminality was afoot which gave them a legally proper justification to detain Plaintiff.  The Court agrees.

It is important to note that the Complaint describes the object discovered in Plaintiff's pocket as a "crack pipe," not simply a "pipe," a "tobacco pipe," or a "glass tube." The distinction, provided by the Plaintiff himself, is important because "[a] crack pipe is a telltale sign of narcotics possession. The defendant's possession of a such a pipe . . . gave the arresting officers reason to believe that the defendant unlawfully possessed a controlled substance, consisting of, at least, crack cocaine residue. The officers, therefore, had probable cause to arrest and search the defendant." People v. Ketteles, 62 A.D.3d 902, 903-04 (2nd Dept. 2009)(citations omitted); see also People v. Edwards, 160 A.D.2d

501, 502 (1st Dept. 1990);[2] but see Ketteles, 62 A.D.3d at 909 (Leventhal, J., dissenting).[3] Moreover, even if the discovery of the crack pipe alone did not provide a legally proper justification for detention, that legal justification arose once the officers found the crack cocaine on Plaintiff's person.

The probable cause from the discovery of these items defeats any claim for false arrest damages arising from the detention after the discovery of the crack pipe and drugs.[4] See Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999),[5] cert. denied, 120 S. Ct. 398 (1999); Gonzalez v. City of Schenectady, 2001 WL 1217224, *5 (N.D.N.Y. Sept. 17, 2001).[6] Thus, assuming, *arguendo*, that the officers did not have a legally proper justification to initially stop and detain Plaintiff, such a justification arose once the crack pipe and crack cocaine were discovered in Plaintiff's pockets. Accordingly, any claim for damages for the period of detention after the discovery of the crack pipe and crack cocaine must be dismissed. Leave to amend will not be granted on the dismissed portion

---

[2]("The officer's observation of the glass pipe provided probable cause to believe that the pipe or bag contained crack or crack residue, in violation of the drug laws. In this respect, a "crack pipe" is analogous to glassine envelopes, plastic vials and tin packets, which are also not illegal, but in a drug-prone location are a telltale sign of illicit activity justifying minimal intrusion [ ].")

[3] ("The mere possession of a glass pipe that may be used to smoke crack is not a crime unless it contains an illicit substance .")

[4]The Amended Complaint alleges that crack cocaine was found immediately after the discovery of the crack pipe and pursuant to the same search. The Amended Complaint does not allege a cognizable period of detention that Plaintiff was aware of between the discovery of the two items such that he would be entitled to separate damages for the fleeting, momentary detention between the discovery of the two items.

[5]("The individual defendants here lacked probable cause to stop and search Townes, but they certainly had probable cause to arrest him upon discovery of the handguns in the passenger compartment of the taxicab in which he was riding. The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.")

[6] (plaintiff has cognizable false arrest claims for the period of time between initial contact with the police and the point when the marijuana was discovered, but not for the period thereafter)

6

of this claim because the amended complaint, even when read liberally, does not "suggest[ ] that the plaintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

### b.  Stop and Frisk

Defendants argue that, in light of the allegations in the Amended Complaint, the officers had a legal justification to stop and frisk Plaintiff.  The Court disagrees.

A police officer may stop and detain an individual to conduct a reasonable inquiry into whether crime is afoot without violating the Fourth Amendment if the officer possesses a reasonable suspicion that criminal activity has occurred or is about to occur. Terry v. Ohio, 329 U.S. at 20.  This is known as a Terry Stop.  However, when an officer detains an individual for questioning yet lacks this reasonable suspicion, a seizure under the Fourth Amendment occurs.  See United States v. Glover, 957 F.2d 1004, 1008 (2d Cir. 1992).

Further, Terry Stops, because they are investigative in nature, must be brief and "reasonably related in scope to the circumstances which justified the intervention in the first place."  See Terry, 329 U.S. at 20.  If such a stop lasts "longer than is necessary to effectuate the purposes of the stop" or employs tactics more invasive than necessary under the circumstances, then the stop becomes a *de facto* arrest for which the officer must have probable cause to believe that a crime has occurred.  See United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995; Oliveira v. Mayer, 23 F.3d 642, 645-46 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995).

7

During a Terry Stop, an officer may conduct a "pat-down frisk" if the officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot *and* that the persons with whom he is dealing may be armed and presently dangerous." Terry, 392 U.S. at 30.  Further, "where nothing in the initial stages of the encounter serves to dispel his *reasonable fear* for his own or others' safety, he is entitled... to conduct" this pat down frisk, which is intended be "a carefully limited search of outer clothing of such persons in an attempt to discover weapons...." Terry, 392 U.S. at 30.

The allegations in the Amended Complaint establish merely that the police observed Plaintiff walking down a street in the City of Binghamton at approximately 1:00 A.M carrying a laundry detergent bottle. In light of the questions that the police asked, they evidently were aware that Plaintiff had purchased $0.90 worth of gas (approximately the amount needed to fill a laundry detergent bottle) at a nearby gas station and had a brief conversation with a black male outside the gas station before leaving to walk down the street.  While the police assert that the events occurred in a portion of Binghamton known for its illegal drug activity; that they witnessed Plaintiff and "Country" go behind the gas station; that they then saw "Country" run away from the scene; and that when they approached Plaintiff he was fidgeting nervously and reluctant to speak, those facts cannot be gleaned from the Amended Complaint.  Thus, without additional information impacting the facts that where known to the police at the time of the stop, there is nothing indicating that was reasonable basis for the officers to suspect that Plaintiff was engaged in unlawful behavior at the time he was stopped.

Further, and assuming *arguendo* that there was a reasonable basis for the initial

8

stop, the facts alleged in the Amended Complaint do not indicate anything occurring or being said thereafter that would warrant a more intrusive investigation beyond simply asking Plaintiff what he was doing which, presumably, would have lead to the response that he was trying to start the vehicle that was 100 feet away.  Again, the facts alleged by Defendants that they believed that Plaintiff had just engaged in a drug transaction and that, based on their experience, individuals involved in drug transactions often carried concealed weapons, cannot be gleaned from the Complaint.  Based upon this, Defendants' motion to dismiss the false arrest claim for the period from initial stop to discovery of the crack cocaine, and the claim for an illegal search of Plaintiff's person, is denied.[7]

### c.  Equal Protection

The Amended Complaint contains two references to the phrases "equal protection rights" and "Fourteenth Amendment," and the Prayer for Relief alleges that the Plaintiff "feels that he was targeted simply because of his race."

The Fourteenth Amendment's Equal Protection Clause "is basically a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  In order to prevail on an equal protection claim, Plaintiff must establish that (1) he was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of race, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000);

---

[7]On a motion for summary judgment, Defendants' may present their basis for the stop and the pat down, and whether Officer Baer believed the crack pipe felt like pocket knife, as alleged on this motion.

9

Lovell v. Comsewogue Sch. Dist., 214 F. Supp.2d 319, 321-22 (E.D.N.Y. 2003).

The Amended Complaint fails to identify Plaintiff's race, fails to allege that similarly situated individuals of a different race where treated differently, and fails to allege any actions or statements demonstrating racial animus or bias by the Defendants. Plaintiff's legal conclusion that he was targeted because of his race is not support by factual allegations such to make out a plausible Fourteenth Amendment Due Process claim. Accordingly, that portion of the First Cause of Action is dismissed. Because Plaintiff might be able to assert facts supporting a plausible Equal Protection Clause claim, Plaintiff is granted leave of thirty (30) days to file a second amended complaint asserting such a claim. If he chooses to file a second amended complaint, Plaintiff must, in addition to alleging an equal protection claim, re-allege claims (or portions of claims) that have not been dismissed. Plaintiff may not re-allege claims (or portions of claims) that have been dismissed unless he is granted leave to re-plead a particular claim, and he may not allege new claims upon which he has not obtain leave to file.

### d. False Statements

The "Second Cause of Action" alleges that the Officer Stoeckel "presented False statements and documents to the court." According to the Amended Complaint, Officer Stoeckel "wrote the [police] report and said he did everything that Officer Baer did. However he is lying." Am. Compl. p. 3. The allegation fails to allege how Plaintiff was injured by Stoeckel's purported conduct or how the conduct violated a federal or constitutional right. Accordingly, the false statement claim is dismissed. Plaintiff is granted leave of thirty (30) days to file an amended claim arising from the purported false document.

10

### e. Failure to Intervene

The Second Cause of Action also alleges that Officer Stoeckel failed to intervene to prevent Officer Baer from illegally detaining and searching Plaintiff. Law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). Inasmuch as Plaintiff may have viable false arrest and improper search claims against Officer Baer for conduct that occurred in Officer Stoeckel's presence, the motion to dismiss the failure to intervene claim is denied.

### f.  Third Cause of Action

Defendants assert that the Third Cause of Action is merely a re-statement of the First Cause of Action and must be dismissed. The Court agrees. As pled, the Court does not discern a difference between the First and Third Causes of Action. Accordingly, the Third Cause of Action is dismissed. Because the Court does not discern a non-futile basis for repleading the claim, leave to renew this claim is denied. Cuoco, 222 F.3d at 112.

### g.  Claims Against the City of Binghamton

Defendants move to dismiss any claim that might be asserted against the City of Binghamton because the Amended Complaint does not allege that the Plaintiff suffered a constitutional injury as a result of a policy or custom of the City of Binghamton. The Court agrees. There is no factual allegation of a policy or custom which is alleged to have cause the asserted constitutional violation(s). Accordingly, any claim brought against the City of Binghamton is dismissed. See Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008)("In order to prevail on a claim against a municipality under section 1983 based on acts of a

11

public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.")(citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978)).  Because a liberal reading of the Amended Complaint does not yield an indication of an inartfuly pleaded yet plausible Monell claim, leave to replead a claim against the City of Binghamton is denied.

**V.     CONCLUSION**

Defendants' motion to dismiss [dkt. # 14] is **GRANTED IN PART and DENIED IN PART**.  In this regard:

(1) Any claim for damages for the period of detention after the discovery of the crack pipe and crack cocaine is **DISMISSED**;

(2) Plaintiff's Equal Protection Clause claim is **DISMISSED without prejudice to re-pleading.** Plaintiff is **granted leave of thirty (30) days** to file a second amended complaint asserting such a claim.

(3) Plaintiff's false statement claim is **DISMISSED**.  Plaintiff is **granted leave of thirty (30) days** to file an amended claim arising from the purported false statement.

(4) The Third Cause of Action is **DISMISSED**.

(5) Any claim brought against the City of Binghamton is **DISMISSED**.

The motion in all other respects is **DENIED.**

**IT IS SO ORDERED**

DATED: May 10, 2011

Thomas J. McAvoy
Senior, U.S. District Judge